160 N.J. Super. 213 (1978)
389 A.2d 500
ELAINE NADEL, PLAINTIFF-APPELLANT,
v.
ANGELO R. BERGAMO, M.D., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 5, 1978.
Decided June 26, 1978.
*214 Before Judges MICHELS, PRESSLER and BILDER.
Mr. William O. Barnes, Jr. argued the cause for appellant.
Mr. Barry L. Shapiro argued the cause for respondent (Messrs. Shanley & Fisher, attorneys).
*215 The opinion of the court was delivered by MICHELS, J.A.D.
Plaintiff Elaine Nadel appeals from a summary judgment in favor of defendant Angelo R. Bergamo, M.D., dismissing her action to recover damages for personal injuries based on defendant's alleged medical malpractice.
A brief review of the nature of the claim involved and the chronology of events is helpful to a resolution of this appeal. On November 5, 1973 plaintiff consulted defendant, a physician specializing in plastic and reconstructive surgery. She complained of sinus trouble, headaches and difficulty with nasal breathing, apparently caused by an occlusion on the left side and partial occlusion of the right. Her appearance as the result of facial scarring and facial dropsy, especially over the right side of her face, also caused her concern. She discussed the possibility of surgery, specifically a "face lift" operation, with defendant. On November 21, 1973 defendant performed a plastic surgical operation on plaintiff at Mountainside Hospital. Apparently the results achieved in the first operation were not entirely successful and defendant performed a second operation.
On November 5, 1975 plaintiff instituted this action seeking to recover damages for the personal injuries she allegedly sustained as a result of the surgical procedures defendant performed in 1973. Plaintiff charged that defendant was guilty of medical malpractice in his: (1) diagnosis and treatment; (2) performance of the surgical procedures and, (3) failure both to inform her of the proposed treatment's serious risks and possible collateral hazards, and to afford her an opportunity for an informed consent. Although plaintiff's complaint alleged numerous charges of medical malpractice against defendant, she subsequently limited her claim to one based on lack of informed consent. In this regard the charge was supported by Dr. David H. Smith's report of October 7, 1976, which states:
*216 I have reviewed the Mountainside Hospital records and the letter of Dr. Mancuse-Ungaro in the above case.
Mrs. Nadel went to Dr. Bergamo for a "face lift." He prevailed on her to have her nose operated on. He operated November 22, 1973 in the Mountainside Hospital but a "bump" was left in the nose. The operative record dictated by Dr. Bergamo on December 5, 1973 is quite impressive and appears to be in order.
Mrs. Nadel re-entered the hospital and was re-operated by Dr. Bergamo in February 1974. He states "admitted for additional revision of nose to increase breathing." Again the operative report is full and appears to be in order.
Dr. Ungaro, in a letter dated March 10, 1975 found definite malformation of the nose and advised further operative repair and grafts. Thus, the operations done by Dr. Bergamo were unsuccessful. But, as far as I can see, he followed standard procedure.
What he did not do, apparently, was to inform Mrs. Nadel that it was possible for the operations to fail and for her to be left with a nasal deformity and nasal obstruction.
Plaintiff furnished defendant with Dr. Smith's report in November 1977. Thereafter, on January 11, 1977 plaintiff moved for an order both to compel defendant to appear for depositions and to furnish her with copies of his experts' reports. The motion was returnable on January 28, 1977. On or about January 15, 1977 Dr. Smith died. Plaintiff immediately notified defendant and apparently brought the matter to the trial judge's attention at the motion argument. In addition to ordering all parties to take depositions according to a specific schedule, the judge required defendant to supply all experts' reports in his possession by February 2, 1977, to furnish any additional reports 14 days after the depositions, and:
If the plaintiff obtains the services of additional experts, the names and reports shall be given to the attorneys for the defendant on or before February 15, 1977.
While the judge's ruling was handed down on January 28, 1977, the order was not signed until February 15, 1977.
When plaintiff failed to furnish defendant with the names and reports of any additional experts by February 15, 1977, *217 as the order required, defendant immediately served and filed a notice of motion returnable on March 11, 1977 to bar plaintiff from using expert testimony on the issue of deviation from acceptable medical standards at trial. On March 4, 1977 plaintiff filed a cross-motion to suppress defendant's defenses for failure to furnish his experts' reports in the time provided by the order of February 15, 1977. On April 5, 1977 the trial court entered an order which, in pertinent part, provided:
ORDERED that the Court having ruled by an Order of February 15, 1977, that if plaintiff obtains the services of additional experts, their names and reports shall be given to the attorneys for the defendant on or before February 15, 1977, and that date having passed without plaintiff having done so, plaintiff cannot introduce any additional experts at trial; but that the question of the admissibility of the report of the plaintiff's deceased expert is expressly left open and unaffected by this Order; * * *.
On April 13, 1977 defendant moved for summary judgment, which the trial court granted ostensibly because plaintiff would be unable to establish a prima facie case of medical malpractice under the informed consent doctrine since she did not have an expert witness and would be barred from producing one at trial by the prior orders of the court. See Moore v. Underwood Memorial Hosp., 147 N.J. Super. 252, 257 (App. Div. 1977); Kaplan v. Haines, 96 N.J. Super. 242, 257 (App. Div. 1967), aff'd o.b. 51 N.J. 404 (1968). See also, Lopez v. Swyer, 115 N.J. Super. 237, 251 (App. Div. 1971), mod. 62 N.J. 267 (1973). This appeal followed.
We are convinced that the trial judge erred in granting summary judgment in favor of defendant. The judge mistakenly exercised his discretion by both granting plaintiff only an additional 18 days within which to obtain another medical expert witness and thereafter precluding plaintiff from introducing additional experts at the trial because of her failure to furnish the name and report *218 of any other expert within the specified time. When Dr. Smith unexpectedly died a few months after rendering his report and before he was deposed, plaintiff obviously needed some additional time within which to locate and retain another expert witness. In a case of this kind plaintiff should have been granted an extension of at least 30 days to retain a new expert witness and furnish his name, address, qualifications and opinion to defendant. Defendant, in turn, should have been afforded a reasonable opportunity to depose the new expert if he so desired. The judge's failure to grant such a reasonable extension of discovery time and his subsequent enforcement of his prior order by limiting proof effectively deprived plaintiff of her day in court. In our view, the trial judge should not have granted the summary judgment simply "because orders have to mean something, or they mean nothing."
We recognize that it is essential to the orderly administration of justice and the dignity of the courts for trial judges to be able to regulate their calendars and the causes before them. Their decisions on matters such as those presently under consideration should not be interfered with unless an injustice has been done. See Allegro v. Afton Village Corp., 9 N.J. 156, 161 (1952); Stein v. Goodenough, 73 N.J.L. 812, 816 (E. & A. 1906); Bell v. Llewellyn Publications Co., 61 N.J. Super. 263, 267 (App. Div. 1960), certif. den. 33 N.J. 118 (1960). However, we must remember, as our Supreme Court has so appropriately noted in Allegro v. Afton Village Corp., supra:
But courts exist for the sole purpose of rendering justice between parties according to law. While the expedition of business and the full utilization of their time is highly to be desired, the duty of administering justice in each individual case must not be lost sight of as their paramount objective. Pepe v. Urban, 11 N.J. Super. 385 (App. Div. 1951). [9 N.J. at 161]
We are satisfied from our review of the record that an injustice has been done, requiring our intervention. The *219 grant of summary judgment, ostensibly to enforce its prior orders, clearly prejudiced plaintiff's rights. Accordingly, we reverse the summary judgment of the Law Division and vacate the prior orders of February 15, 1977 and April 4, 1977. We remand the matter to the trial court for further proceedings. We grant plaintiff leave to amend her answers to interrogatories within 30 days from the date of this opinion to include the name, address and report of any other proposed medical expert witness retained on her behalf. Additionally, we grant defendant another 15 days from receipt thereof within which to depose said expert as he so desires. In view of our decision, we do not reach the other issues raised in connection with this appeal, including plaintiff's contention that expert testimony was not necessary in the circumstances here present to establish a prima facie case of medical malpractice using the doctrine of informed consent. We do not retain jurisdiction.
Reversed and remanded.